Good morning. May it please the Court. Michael Upperman on behalf of the appellant Gary Tomey, I'd like to reserve five minutes of my time for rebuttal. I think the problem in this case started with the language in the indictment, although I'm not sure anyone, including the And the jury asked, there's two defendants in this case. They're both charged with conspiracy for count one. Can we find one guilty and the other not guilty? So the parties discussed that, and it is true that the Court pointed out, and the government pointed out, that the indictment charged that Mr. Tomey and Mr. Eeks together and with other persons did conspire, but other of course were not named in the indictment. And when Judge Rogers began to ask how could I allow the jury to come back with anyone else being guilty as the other person in this conspiracy, the government suggested that it could be DiLoretto. And Judge Rogers, and this is page 338 of day eight of the trial transcripts, I think got it right initially when she says, but that's not what you charged. You charged these two men a conspiracy. The only evidence of DiLoretto was Achievement League. There's only one reference to YAL in this indictment, and that's on page two, where it just states, and she goes on to describe where it only referenced YAL one time in the indictment. Now, of course, the jury ultimately came back with a guilty verdict against my client for all eight counts, including the conspiracy, and they found the co-defendant, Mr. Eeks, not guilty of all eight counts, including the conspiracy. And notably, the judge told them that if they were going to find one defendant guilty and the other defendant not guilty, the jury must specify on the verdict who the other people were that the guilty defendant conspired with. And the jury came back with DiLoretto and Mercer and Bond. Now, let me quickly address Mercer and Bond, because I submit that you can easily determine that there was no charge and no evidence of a conspiracy involving those two in this case, simply by looking at the closing argument of the government in this case. Now, in its answer brief, the government has gone to great a conspiracy between my client and those two individuals. But during the government's closing argument, not once but twice, both an initial closing argument and a rebuttal, Mr. Bond's name and Mr. Mercer's name was not mentioned a single time. So clearly, if the government's theory in this case was that these two people, actually witnesses who testified in the trial, were when they're trying to explain and connect the dots for the jury as to all the evidence that supports the charges in this case, would have mentioned those two individuals, again, two people that actually testified, would have mentioned them at least once. But they're not mentioned a single time. And again, Judge Rogers, in her JOA order, also didn't find that there was any conspiracy regarding those two. So I submit that the evidence regarding those two is not sufficient to support a would be a constructive amendment if the court were to try to uphold a conviction based on that. I think EECS is also easy to figure out. The government's conceded in their answer brief, and I appreciate their candor in this regard. Although this court in Andrews got vacated or receded from the rule of consistency idea that if one defendant is acquitted of a conspiracy charge, that means that the other defendant who is convicted, that you must also set aside that from the Andrews case, because Andrews did not involve a specific verdict form where the jury listed who the conspiracy was with. In this case, the jury did specify three people, none of which who were EECS. And in that situation, it would be a violation of my client's Sixth Amendment rights to still uphold my client's conspiracy conviction based on an alleged conspiracy with EECS, when the jury has specifically found that there was no conspiracy with EECS. So the whole case comes down to DiLoretto. And I've argued in the brief, and that's this sense, with a JOA argument, I'm limited to the same things that defense counsel argued below, that there's insufficient evidence in this record to support a conspiracy finding regarding DiLoretto and my client. But I think just as importantly, if not maybe even more importantly, I really want to focus in on the constructive amendment issue that Judge Rogers began to hit on when this issue came up during... What about DiLoretto though? Are you conceding that there would have been enough evidence to find a conspiracy between your client DiLoretto? You know, Judge Rogers made the finding that there's no direct evidence of any agreement between my client DiLoretto to have an unlawful purpose to defraud people. The government's pointed to some documents that were submitted by the Mississippi Secretary of State. I submit that there's an equally plausible, innocent explanation for Mr. DiLoretto's response to the Secretary of were in the process of potentially trying to open up an office in Mississippi, and that after, I believe the exact phrasing was, after fundraising expenses, the rest of the money went to charity. Again, that could be construed as that you're paying the people that are obtaining the fund, the funds for the fundraising, and that would be consistent with the idea in this case. Certainly, I understand the theory... Wasn't there... Didn't your own client testify that he had run the idea of keeping as part of the script that 100% of the funds went to charity, and he had run that by DiLoretto, suggesting DiLoretto's knowledge, and wanted to reasonably assume his knowledge that was not accurate? To the charity. I mean, again, I know we're mincing words, and that was the defense in this case, that it's one thing to say that 100% would go to charity. It's different to say that 100% would go to the charity, because my client's explanation is that's true. He is the charity, or these two businesses, CFS and CCS, are the charity, and therefore, they would pay their employees within the charity, and the rest of it would go to the charitable cause. So again, I think that's a closer issue. I'll stand by what Defense Counsel argued below, but I do want to focus in on this constructive amendment issue, because if you look at this indictment, just as Judge Rogers indicated, where is there any evidence that the government is arguing a theory of a conspiracy involving YAL in this indictment? You begin... First, let's talk about the standard of review. You would agree it's a plain error standard? Nobody objected below, so that this issue could have been delved into by the district court? Unfortunately, I think Defense Counsel was caught off guard, because it was brought up for the first time in jury deliberations, but yes, there's not an objection regarding the constructive amendment during the proceedings below. So it is a plain error review for this court, but nevertheless, I think you can reach a plain error finding based on the plain language of this indictment. If you begin... Obviously, I'm focusing on the manner and means of the indictment. Paragraph 1 specifically references the fact that my client created the two charities, CFS and CCS. No mention of YAL in that paragraph. YAL is mentioned the only time in this indictment, and it's mentioned really in passing in paragraph 2, that there was other entities that were used, and YAL is one of the ones that's mentioned. But then you go on from there, paragraph 3, Tomey and Eakes used the charity for these purposes. 4, it specifies Tomey and Eakes directed CFS and CCS, completely separate entities from YAL. 5, Tomey and Eakes crafted the solicitation language used by employees to falsely represent that CFS and CCS. Again, no mention of YAL. Paragraph 6, same thing, only mentioned CFS and CCS, no YAL. And then you go down to 8 and 9. Again, you only have CFS and CCS being mentioned, no YAL. And why is this a problem? I submit you can also, again, look at the government's closing argument in this case. The government did mention DiLoretto, I think in passing, didn't focus on DiLoretto. And when they did mention DiLoretto, they mentioned him in the context of Mr. Tomey got the idea to form his own charity, or two charities in this case, from DiLoretto. DiLoretto had formed his YAL in Indiana in 2006. The government alleged that that's where my client got the idea, and that's where he branched off and then conducted the activity, which is the focus of this indictment, CFS and CCS. So when my client's attorney, defense counsel, during the trial below is responding to the charges in this case, based on this indictment, is responding to the allegations made by the government in its closing argument, the focus is on is there a conspiracy involving my client and anyone else, whether EECS or anyone else, involving CFS and CCS. It's not fair for the government, after the fact, only when the jury brings up this issue for the first time in deliberations from, for defense counsel, to have to somehow respond to, well, it's not fair because defense counsel couldn't respond. The closing arguments were over. There was no more evidence or argument to be presented. And for the first time, this idea is being brought up that there could be someone else, and who the jury came up with is D. Loretto, but D. Loretto and Y. L. was not the focus of this case. They could have... It was not the focus, but the jury got those names and that concept from somewhere that somewhere must have been the evidence, correct? And I, it's more of an uphill battle when it comes to a material variance argument based on the evidence, but it's not that when it comes to the constructive amendment, because the constructive amendment, you focus on the language in this would be put on notice, as is required under the Fifth Amendment, to think that this is alleging a conspiracy between my client and activities regarding Y. L. and D. Loretto. It just doesn't allege that. Paragraph after paragraph after paragraph focuses on two entities, CFS and CCS. That's completely separate from Y. L. The government argued that these came about after D. Loretto had already formed Y. L. and Indiana in 2006. I see that I'm into my rebuttal time. I'll reserve the rest of my time for rebuttal. I'll give you your full rebuttal time. Thank you. Good morning again. Good morning. Welcome back. May it please the court, this is Jordan Learn on behalf of the United States. With me at council table is Alicia Forbes, who represented the government at this case. I'd like to begin by noting, you know, Mr. Tomey has emphasized over and over that the government didn't focus on Bond and Mercer in closing arguments. But what the government says in closing arguments is not evidence. The jury is constantly instructed to that. I guess more to the point is the indictment. He says there's no way the indictment could have put Mr. Tomey on notice that the government was alleging a conspiracy with Y. L. Youth Achievement League. Yes, your honor. Well, my response to that would be as Mr. Tomey has conceded this issue was not raised in the district court below. I understand the standard of review. And the government did in response to the initial motion for judgment of acquittal did make the argument that DiLoretto was a co-conspirator. But what he said was he had no opportunity to respond to the jury about that. It was the trial was over by the time. Not for the initial motion, your honor, in regard to arguing for a judgment of acquittal on the count one, the conspiracy. This was before the defendant had presented his case and the government argued in response to that that DiLoretto was an unnamed co-conspirator in the indictment. And to that in the language of the indictment does focus on children, family services and children charitable services. But the date of the indictment, August 12, 2008, predates the creation of both of those entities. So looking into the nature of the scheme that's described in the indictment about the material misrepresentations that were made and further into this conspiracy, August 12, 2008, could only refer to the acts of Youth Achievement League. Second to that point, which was alleged to be one of the organizations that was involved in this case. It seems like that's an argument for the other side, isn't it? I mean, I don't believe so, your honor, because if you're looking at the date of the conspiracy, if you're assessing the defendant's conduct beginning with August 12, 2008, and the scheme to defraud as described in this indictment, then that would conduct, would put you on notice that you're looking at conduct associated with Youth Achievement League. The other point I would like to... Just to, you're talking, so tell, the indictment talks about conduct August 2008. Right. Just explain, you know your facts better than we do. Right. So tell me, explain, connect the dots. Right. So the indictment alleges between August 12, 2008, August 12, 2008, and on or about May 31, 2012. So those are the dates the conspiracy is alleged to have occurred. Now according, if I've got my facts right, which I think I do, Children's Family Services was not an entity that was in existence at the time. It came into existence in December of 2008. And then Children's Charitable Services came into existence in February of 2010. So the scheme, that's described in this indictment, at least before December of 2008, could only have referred to Youth Achievement League. But there's another point that I would like to make, and that... I'm sorry, I have no clue what you're talking about. I mean, what, tell me how that matters to his argument. By the dates of the indictment and this, the scheme that's described, you would be on notice that Youth Achievement League was implicated in this case. But there's another point that I would like to make, and that is that Ohio Children's Services is also mentioned in this indictment on page four, section six, subparagraph B, with the United States Postal Service against Mr. Tomey. And that was an action brought against the United States Postal Inspection Service against Ohio Children's Services doing business as Youth Achievement League. So the indictment certainly does make mention of Youth Achievement League, implicates Youth Achievement League. But one of your stronger position, I gather, is that he was well on notice that, how do you pronounce the person's name? DiLoretto? DiLoretto. That he was a potential co-conspirator because you alerted the defendant to that fact in responding to their motion for judgmental acquittal mid-trial. Right, and we did make that argument, and we also made an argument in closing as well, I believe. So, but also... There was an argument referencing DiLoretto in closing? Yes, Your Honor, I believe so. But it was brought in our initial, I'm sorry, our initial response, the initial JOA. But what I will also note is I don't think there's been any dispute that Children and Family Services and Children Charitable Services have been sufficiently alleged in this indictment. And although Bond and Mercer are not mentioned by those entities, and someone reviewing this indictment would reasonably be unnoticed, that those corporate entities, the board included, would be implicated in this conspiracy and this scheme as described in the indictment. So, you know, based upon that, there is evidence in this record that Mr. Tomey conspired with Mercer and Bond, and that that scheme was alleged sufficiently within the indictment. And with respect to that... Oh, yes, thank you. I will also note that Mr. Tomey originally did want to call Mr. DiLoretto as a witness in his defense case because Mr. DiLoretto was clearly relevant to the charges that were described in the indictment. So, Mr. Tomey was clearly unnoticed that DiLoretto was implicated in this case, and that issue had come up before the judgment of acquittal. He wanted to call him, but he didn't call him? He did not call Mr. DiLoretto. He had subpoenaed him. Because he was told he couldn't call him? No, my understanding is that he was not being a cooperative witness, and there was some discussion that he would be invoking his Fifth Mr. Tomey's defense. So certainly, Mr. Tomey reviewing this indictment, and, you know, I will say that the trial testimony, you know, DiLoretto came up multiple times during trial, and there were no objections to any of that testimony as being outside the scope of the indictment. What's the strongest evidence from the trial that Mr. Tomey and Mr. DiLoretto conspired to commit mail fraud? Yes, Your Honor, I would direct this court's attention to Mr. DiLoretto's interactions with the Secretary of State, the Mississippi Secretary of State. Now, she had reached out to Mr. DiLoretto because Mississippi Children's Services had not properly registered. And in her discussions... And who was the witness that testified? That was, I believe it was Kim Anderson, Your Honor. Let me see. And that should appear, that's the day five of trial, beginning at page 27, is where this testimony appears. Because Youth in Mississippi. And so in March of 2009 was her testimony. She had a phone conversation with Mr. DiLoretto, where he represented that Mississippi Children's Services had a physical office in Mississippi run by Tomey, that 100% of the funds raised by Mississippi Children's Services were going to charity, that there were no administrative costs because his office was covering the Mr. DiLoretto knew that was not true, or at least it's reasonable for a jury to infer he knew it wasn't true because he was president of Youth Achievement League. It's a reasonable inference that the president of Youth Achievement League would know whether or not a subsidiary of Mississippi Children's Services had an office actually in Mississippi. But additional... And that evidence shows a conspiracy between DiLoretto and Mr. Tomey. And Mr. Tomey. How? Because it's perpetuating through Mississippi Children's Services, right? It was the same narrative that that Mr. DiLoretto... Well, it was a consistent narrative that Mississippi Children's Services had an office in the state, that 100% of the funds were going to... I'm just talking about evidence testimony that the two of them conspired. I mean, I understand it's consistent with your theory of the case, but your best evidence is that the Mississippi Secretary of State spoke with Mr. DiLoretto and Mr. DiLoretto said something that wasn't true. Well, it's certainly circumstantial, Your Honor, but we also do have... Well, the defendant testified that the idea to start this business model, this scheme, came from Mr. DiLoretto and that he became involved. We know that Mr. DiLoretto and Mr. Tomey weren't operating these organizations completely separate, right? Their names were both on the registration for Youth Achievement League in Florida and Mr. Tomey testified that we had transfers in between Mr. Tomey's Youth Achievement League accounts and Mr. DiLoretto's Youth Achievement League accounts and some significant transfers of money. And Mr. Tomey testified at trial. His explanation was that that was to pay Youth Achievement or his subsidiary, the Children's Services Organizations, operating underneath Youth Achievement League, that Mr. DiLoretto paid that payroll. So Mr. DiLoretto at the time that he spoke with Mississippi Children's Services certainly knew that his agency wasn't covering Mississippi Children's Services administrative costs, right? Because he was paying the payroll and he was being reimbursed by the defendant, Mr. Tomey, through Mr. Tomey's accounts for Mississippi Children's Services. He also knew that there wasn't an office or at least the office that that ran Mississippi Children's Services wasn't in Mississippi because he was sending payroll checks to employees in Florida. So based on that evidence, the evidence that the defendant provided when he said that the came from Mr. DiLoretto, both of whom had a long background in the telemarketing industry and the profit sector. But there's also evidence that the defendant, Mr. Tomey, discussed his charity model with Mr. DiLoretto. And so taking all those facts together, in addition to Mr. DiLoretto's false statements to the Mississippi Secretary of State's office, which arguably, you know, were made in furtherance of the conspiracy, right? It was consistent with how that conspiracy was being conducted in Mississippi. It was consistent with how the conspiracy was being conducted everywhere else. And it was consistent with, importantly, what was on the solicitation materials that the defendant had been sending out on behalf of Mississippi Children's Services. So based on the totality of all of that evidence, the government's position is that a jury could reasonably infer that Mr. DiLoretto was aware of the scheme and willfully participated in an act in furtherance of the scheme. It doesn't have to be that he was constantly involved and doing everything along the way. One act in furtherance to conspiracy with knowledge of the conspiracy is sufficient to sustain the jury's verdict in this case. But again, the government's position is that this court is not limited to the evidence solely of Mr. DiLoretto. This court can look to the evidence of Mercer and Bond, who were both board members of Children's Family Services and Children's Charitable Services, who testified that the awareness of the entity's regulatory hurdles. Both Mercer and Bond were aware that the organization had encountered problems in Arkansas, as well as other board members. And the board, including Mercer and Bond, testified consistently that Mr. Tomey was open with this information, that it was provided to the board, although they couldn't recall a lot of specifics. So certainly the board was on notice of the administrative issues and problems and arguably reasonable evidence would be of the the representations made by the solicitors were misleading and intentionally and knowingly so. Let me ask you about a housekeeping matter before you sit down. Government's Exhibit 34 is under seal. It's a timeline of events. Are you familiar with that? Yes, I am. Does any information in that document need to remain under seal? I don't believe so, Your Honor. So I would say no. As a summary exhibit. So unless there are any further questions, we'll rest the remaining of our arguments on our brief and we'll ask the court to affirm the conviction and Mr. Tomey's conviction, a conspiracy, as well as the substantive counts, as well as Senate. Thank you. May it please the court, I'll attempt to be brief. This case is really about fairness. My client's going to stand convicted of the substantive counts, counts two through eight. But when you look at this indictment, when you look at this case, the government wants to have a conspiracy charge stick against my client for something that my client was never put on notice on or for and something that the government hasn't alleged. If you read this indictment, the only fair reading is that the government thought that there was a conspiracy between my client and Mr. Tomey. There was nothing else involved with CFS and CCS. Time and time again, almost every paragraph in this indictment references those two entities. And now after the fact. But you would agree and it's been standard practice for decades that indictments always say and other conspirators not named and and that that is something that that happens from time to time where where the conspirators is a basis for the conviction. You don't disagree with that. As long as that scheme is consistent with what's alleged in the indictment and any scheme involving Mr. DiLoretto is not what's alleged in this indictment. It's just Judge Rogers had it right. She said it on page 338. There's only one reference to Youth Achievement League in this indictment, and that's on page two where it just states Gary Tomey also incorporated other entities as part of the scheme, including Youth Achievement League. That's the only reference to it. There's no reference to Mr. DiLoretto whatsoever. And Youth Achievement League is never mentioned again. And as you know, Youth Achievement League was incorporated, I guess, well in 2006. And Mr. Tomey was gone from that business. I don't know what the latest in 2000. The league may not have been mentioned, but your opposing counsel indicates there was lots in the record to suggest interactions between your client and the conspirator at issue, Mr. DiLoretto. And I can't dispute that, but I submit that the reason the government was putting that on is because they were trying to, just as they argued in closing, here's the genesis of this. Back in 2006, Mr. DiLoretto had already started YAL in Indiana, and my client was working with Mr. DiLoretto at that time, and that's where he got the idea. The idea that's the focus of what we're charging in this case is the conspiracy, which is then Mr. Tomey goes on to form the two CCS. That's the basis for it. That's the the way the evidence came in in the record in this case. That's the way the government argued it. That we're providing you this background regarding DiLoretto, because that's where Mr. Tomey got the idea. And now, but we're really focused on what happened. And again, if you read this indictment, the the allegation is there's a conspiracy involving these two charities, not YAL. There's a slight reference to it, and buried in paragraph two, when there's reference after reference to the other two charities that are the focus of this case. So again, the government got its convictions for the substantive counts, but after the fact, when the jury comes back and says, we don't think that there's a conspiracy as you're alleging between EECS and Mr. Tomey, but can we find that someone else may have been involved in a conspiracy? Well, otherwise I guess they could, but you know, just because the government mentioned DiLoretto in the judgment of acquittal argument, which was actually after my client had already testified, that doesn't change that the indictment doesn't allege. Well, are you then morphing to an argument that there was insufficient evidence to support, leave aside a variance, insufficient evidence to support a finding of conspiracy between DiLoretto and your client? I think, I don't think there's very strong evidence in this record to support that conspiracy, and I stick by defense counsel's argument below. So I think there is an argument on appeal that there is insufficient evidence between DiLoretto and my client, but beyond that, I think potentially the stronger argument is there is a constructive amendment if the government, after the fact, is trying to create a conspiracy between DiLoretto and YAL and my client when that's not what's at all alleged in this indictment, and that's the problem in this case. That's the fairness issue. Where does all this get us? If his convictions affirmed, your client on the substantive counts, I have to go back and look. It's all concurrent sentences, is that correct? I believe that he gets resentenced. I think it's the principle of the thing for you. He's still going to end up with the same sentence even if the conspiracy is reversed. I don't know that that's true. I would, I hope you know better than I would. What's the answer? I would, I think if you agree, and I think, I hope you do, that this, there's no proper charge and potentially no evidence that supports the conspiracy. The conspiracy conviction should be reversed and the case should be remanded for resentencing on the remaining counts. Why would that be? I mean, would you just vacate the conspiracy and the remaining counts would stand? I don't believe the record shows for certain that the judge would have imposed the same sentence had my client not been convicted of the conspiracy count. Why? Substantive counts are even usually heftier with a judge than a conspiracy count. Why not? I'd have to provide the court supplemental authority regarding that. I think there's some case law about the concurrent case, concurrent count doctrine, and if you're overturning one count, I know this issue came up in the Baker case a couple years ago. I know, Judge Martin, you were on that panel, and ultimately it was sent back in that case when one of the counts was overturned for resentencing on the remaining counts, and I submit that that's what should happen in this case as well. Thank you. Thank you. All right, we appreciate the presentation, and now I'll call the case of John Pinson versus